# ORIGINAL

FILED

08 SEP 18 PM 12: 10

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                          DEPUTY

1  COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
2  DARREN J. ROBBINS (168593)
   MATTHEW P. MONTGOMERY (180196)
3  655 West Broadway, Suite 1900
   San Diego, CA  92101
4  Telephone:  619/231-1058
   619/231-7423 (fax)
5  darrenr@csgrr.com
   mattm@csgrr.com
6
   DYER & BERENS LLP
7  JEFFREY A. BERENS
   682 Grant Street
8  Denver, CO  80203-3507
   Telephone:  303/861-1764
9  303/395-0393 (fax)
   jeff@dyerberens.com
10
   Attorneys for Plaintiff
11
   [Additional counsel appear on signature page.]
12
                    UNITED STATES DISTRICT COURT
13
                    SOUTHERN DISTRICT OF CALIFORNIA
14

| | |
|---|---|
| MATTHEW HARMS, Individually and on Behalf of All Others Similarly Situated, ) <br><br> Plaintiff, ) <br><br> vs. ) <br><br> NOVATEL WIRELESS, INC., PETER V. LEPARULO, GEORGE B. WEINERT, DAN L. HALVORSON, KENNETH G. LEDDON, CHRISTOPHER J. ROSS, JAMES W. LEDWITH, GREG LORENZETTI, DAVID A. WERNER and SHAWN C. SWANEY, ) <br><br> Defendants. ) | No. '08 CV 1714 H POR <br><br> CLASS ACTION <br><br> COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS <br><br><br><br><br> DEMAND FOR JURY TRIAL |

### INTRODUCTION AND OVERVIEW

1.        This is a class action for violations of the anti-fraud provisions of the federal securities laws on behalf of all purchasers of Novatel Wireless, Inc. ("Novatel" or the "Company") common stock between February 5, 2007 and August 19, 2008 (the "Class Period"), who were damaged thereby (the "Class").

2.        Novatel is a provider of wireless broadband access solutions for the worldwide mobile communications market.  During the Class Period, defendants misrepresented Novatel's financial performance.  Specifically, defendants failed to disclose that the Company was recognizing revenue in violation of its own revenue cut-off procedures and Generally Accepted Accounting Principles ("GAAP"), thus rendering the Company's publicly reported financial results materially false.

3.        Compounding their deceit, defendants also repeatedly misrepresented the status of an internal accounting review by the Company's Audit Committee.  On May 13, 2008, defendants represented that the Company was unable to file its Form 10-Q with the Securities and Exchange Commission ("SEC") on time because of a review of a single customer contract which they represented was "substantially completed today."  Over three months later, on August 19, 2008, defendants admitted that the review was still ongoing, that it involved at least six transactions representing $9.1 million in revenue, and that "[u]pon completion of the Audit Committee review, a decision will be made as to whether a restatement is required."

4.        As a result of those disclosures, Novatel's stock price dropped from $8.40 to $6.29 the next day, a 25% decline.  This decrease in Novatel's stock price was a result of the artificial inflation caused by defendants' misleading statements coming out of the stock price.

## JURISDICTION AND VENUE

5.      The claims asserted arise under §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5. Jurisdiction is conferred by §27 of the 1934 Act.  Venue is proper pursuant to §27 of the 1934 Act. Novatel's headquarters are located in San Diego, California and false statements were made in this District and acts giving rise to the violations complained of occurred in this District.

## THE PARTIES

6.      Plaintiff Matthew Harms purchased Novatel securities during the Class Period as set forth in the attached certification and was damaged thereby.

7.      Defendant Novatel is a provider of wireless broadband access solutions for the worldwide mobile communications market, with its headquarters located in San Diego, California. Novatel's stock is traded under the symbol NVTL on the Nasdaq, which is an efficient market.

8.      Defendant Peter V. Leparulo ("Leparulo") was, at all relevant times, Chairman and Chief Executive Office ("CEO") of the Company.

9.      Defendant George B. Weinert ("Weinert") was, at all relevant times, President of the Company.

10.     Defendant Dan L. Halvorson ("Halvorson") was, at all relevant times until his resignation effective June 15, 2007, Chief Financial Officer ("CFO") and Treasurer of the Company.

11.     Defendant Kenneth G. Leddon ("Leddon") was Senior Vice President and CFO of the Company from November 2007 through the end of the Class Period.

12.     Defendant Christopher J. Ross ("Ross") was, at all relevant times, Senior Vice President of Operations of the Company.

13.     Defendant James W. Ledwith ("Ledwith") was, at all relevant times, a board member and member of the Audit Committee of the Company.

14.     Defendant Greg Lorenzetti ("Lorenzetti") was, at all relevant times, a board member and member of the Audit Committee of the Company.

15.     Defendant David A. Werner ("Werner") was, at all relevant times, a board member and member of the Audit Committee of the Company.

16.     Defendant Shawn C. Swaney ("Swaney") was Corporate Controller of the Company during the Class Period.

## SCIENTER

17.     During the Class Period, the defendants had both the motive and opportunity to conduct fraud. They also had actual knowledge of the misleading nature of the statements they made or acted in reckless disregard of the true information known to them at the time. In so doing, the defendants participated in a scheme to defraud and committed acts, practices and participated in a course of business that operated as a fraud or deceit on purchasers of Novatel securities during the Class Period.

## FALSE AND MISLEADING
## STATEMENTS DURING THE CLASS PERIOD

18.     On February 5, 2007, Novatel issued a press release entitled "Novatel Wireless Reports Preliminary Fourth Quarter 2006 Results and Introduces 2007 Guidance," which stated, "Revenues for the fourth quarter are expected to increase by over 56% year-over-year and by over 38% sequentially to approximately $76 million. . . . These results compare to previous guidance of revenues of $61 to $63 million . . . ." The Company provided revenue guidance for the full 2007 fiscal year of $330-$350 million.

19.     On February 27, 2007, Novatel issued a press release entitled "Novatel Wireless Reports Record Quarterly and Full Year Revenue; Fourth Quarter Revenue Increases 58% Year Over Year and 40% Sequentially GAAP EPS of $0.08 Per Diluted Share and Non-GAAP EPS of $0.14 Per Diluted Share," which stated: "Revenue for the fourth quarter was up 40% sequentially to

$77.0 million versus revenue of $55.1 million in the prior quarter and up 58% over revenue of $48.7 million reported in the same period last year. . . .   Revenue for the year ended December 31, 2006 was $218 million, a 35% increase from $161.7 million reported for the prior year."  In the press release, defendant Weinert stated:

> "We believe our record fourth quarter revenue reflects the underlying strength of our market and the success of our diversification strategy . . . .  We have seen a broad increase in demand, especially for our latest generation EV-DO products from our customer base of many of the world's leading wireless operators and laptop manufacturers.  This demand led to a 40% sequential increase in revenue in the fourth quarter and record backlog at the end of the year."

> "Our record backlog and strong Q1 order flow has increased our visibility and we are expecting sequential and year-over-year growth in what has historically been a seasonally softer first quarter for us . . . .  Our focus is primarily on execution and innovation, as we continue to ramp to meet increasing demand in the marketplace . . . ."

In the press release, defendant Halvorson stated:

> "Our business model has improved considerably . . . [i]n the fourth quarter of 2006, gross margin increased and, even with the inventory charges, our operating margin more than tripled to 6.7% of sales . . . compared to the prior quarter, demonstrating the operating leverage in our model.  Moving forward, we are focused on continuing to improve gross margin and operating margin."

Novatel also provided revenue guidance of approximately $80 million for the first quarter ending March 31, 2007 and $330-$350 million for the fiscal year ending December 31, 2007.

    20.    On March 16, 2007, Novatel filed its Annual Report on Form 10-K with the SEC. The Company's Form 10-K was signed by defendants Weinert, Halvorson, Leparulo, Lorenzetti and Werner, and reaffirmed the Company's financial results previously announced on February 27, 2007.

    21.    The Company's Form 10-K filed on March 16, 2007 also contained Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley") certifications, signed by defendants Weinert and Halvorson, who stated:

    1.    I have reviewed this annual report on Form 10-K of Novatel Wireless, Inc.;

    2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

- 4 -

3.   Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.   The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a)   Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)   Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c)   Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d)   Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.   The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions);

(a)   All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)   Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

22.     On March 26, 2007, Novatel issued a press release entitled "Novatel Wireless Updates Financial Guidance for First Fiscal Quarter; First Quarter Revenues Expected to Eclipse $100 Million Non-GAAP EPS Expected Above $0.35 per Diluted Share," which stated:

> Novatel Wireless, Inc., a leading provider of wireless broadband access solutions, today updated its guidance for the first quarter ending March 31, 2007.
>
> Revenues for the first quarter are expected to increase by over 150% year-over-year and by over 30% sequentially to above $100 million. Non-GAAP EPS, which excludes stock based compensation expense, is expected to be above $0.35 per diluted share. These expected results compare to previous guidance of revenues of $80 million and non-GAAP EPS of $0.16 per diluted share.
>
> "First quarter revenue and net income will be the highest in company history," commented Brad Weinert, acting chief executive officer and chief operating officer of Novatel Wireless. "We believe this is a clear indicator of the underlying strength of our market and the success of our growth and diversification strategy. Our first quarter performance is being driven by strong shipments of the Company's EV-DO Rev. A ExpressCards and over $30 million in revenues from the Company's higher margin Ovation product line, including both follow-on orders and initial stocking orders. Due to higher than expected demand for Ovation devices by our domestic customers, some initial stocking orders, previously expected to be shipped in Q2, were accelerated and will be shipped within the quarter contributing to the higher-than expected revenue."
>
> "With gross margins currently anticipated to be greater than 30% and strong leverage over operating expenses, we expect operating margins to top 15% as we are still scaling our internal infrastructure to meet the increased demand," commented Dan Halvorson, Novatel Wireless' chief financial officer. "We look forward to providing more details on our first quarter results and updating annual 2007 Guidance on our first quarter conference call scheduled for May 1st."

23.     On May 1, 2007, Novatel issued a press release entitled "Novatel Wireless Reports Record Results Driven by Strong Sales Across Multi-Pronged 3G Product Portfolio; First Quarter Revenue Increases 174% Year Over Year and 43% Sequentially GAAP EPS of $0.34 Per Share and Non-GAAP EPS of $0.40 Per Share 2007 Non-GAAP EPS Guidance Increases by Over 50% to $1.00 to $1.05 Per Share," which stated:

> Revenue for the first quarter was up 43% sequentially to approximately $110 million   versus revenues of $77 million in the prior quarter and up 174% over revenue of $40.2 million reported in the same period last year. First quarter GAAP net income was $10.1 million or $0.34 per diluted share. This compares to GAAP net loss of $1.3 million or a loss of $0.05 per diluted share in the prior year period.

1   Novatel provided revenue guidance for the second quarter ending June 30, 2007 of approximately

2   $90 million.  The Company also increased its guidance for the year ending December 31, 2007 to

3   $380-$390 million.  In the press release, defendant Weinert stated:

4            "Our first quarter performance was the best in Company history, with record
         sales, strong gross margins and impressive operating leverage . . . . Sales were even
5        higher than forecasted in our revised guidance due to strong end-of-the-quarter
         momentum for newly introduced ExpressCards and Ovation USB devices.  During
6        the quarter, shipments of the Company's ExpressCards – the most successful new
         product introduction in our history – grew to almost $50 million in sales.
7        Additionally, some initial stocking orders for Ovation USB modems, previously
         expected to be shipped in Q2, were shipped within the quarter contributing to the
8        higher-than-expected revenue.  Over the last month, we have received more follow-
         on orders for Ovation devices and are seeing strong demand across our multi-
9        pronged 3G product portfolio, offering clear evidence of the success of our
         diversification strategy and the increasing demand for innovative wide-area wireless
10       data solutions."

11  In the press release, defendant Halvorson stated:

12           "The first quarter demonstrated the strong operating leverage in our
         model . . . . Gross margin increased to 31.1%, benefiting from improved operational
13       efficiencies and the increase in sales of our Ovation product line, and our operating
         margin more than doubled to 16.1% of sales . . . .  In the second quarter, we will
14       continue to scale our internal infrastructure to meet the growth in our business and
         sector.  Given our strong operating leverage and impressive year-over-year revenue
15       growth, we are raising our non-GAAP earnings guidance by over 50% for the year to
         $1.00 to $1.05 per diluted share."

16
         24.     On May 10, 2007, Novatel filed its Quarterly Report on Form 10-Q with the SEC.
17
    Then Company's Form 10-Q was signed by defendants Weinert and Halvorson, and reaffirmed the
18
    Company's financial results previously announced on May 1, 2007.  The Company's Form 10-Q
19
    also contained Sarbanes-Oxley certifications, substantially similar to the certifications quoted above.
20

21       25.     On June 8, 2007, Novatel issued a press release entitled "Novatel Wireless Increases

22  Second Quarter Guidance; Company Announces Resignation of CFO Dan Halvorson," which stated:

23       Novatel Wireless, Inc., a leading provider of wireless broadband access solutions,
24       today raised guidance for its second quarter ended June 30, 2007 and announced the
         resignation of Chief Financial Officer Dan Halvorson, effective June 15th, to pursue
25       another opportunity.

26           Revenues are expected to be approximately $95 million, ahead of previous
         guidance of $90 million and representing year-over-year growth of over 100%.  Non-
27       GAAP EPS is expected to be $0.29-$0.31 per diluted share, ahead of previous non-
         GAAP EPS guidance of $0.20-$0.22 per diluted share and compares to non-GAAP

28

- 7 -

EPS of $0.02 per diluted share in the second quarter of last year.  Non-GAAP EPS excludes FAS 123R share-based compensation expense.

"We are currently seeing strong demand across our major product lines, most notably for our ExpressCards and Ovation USB devices," commented Brad Weinert, Novatel Wireless' acting Chief Executive Officer.  "Wireless data is clearly becoming a vital component of carrier plans, as enterprises and consumers increasingly recognize the benefits of the technology."

Mr. Weinert continued, "We thank Dan for all of his contributions in the past as Novatel Wireless has grown and diversified over the last three years.  We wish him well in the future.  An active search for Dan's replacement is ongoing and we expect to complete this search in the near future."

26.     On August 6, 2007, Novatel issued a press release entitled "Novatel Wireless Reports Strong Second Quarter Financial Results; Revenue Grows 113% Year Over Year, Gross Margins Increase as Company Raises 2007 Guidance."  Therein, the Company stated:

Novatel Wireless, Inc., a leading provider of wireless broadband access solutions, today reported financial results for the second quarter ended June 30, 2007.

Revenue for the second quarter was up 113% to $97.4 million compared to revenue of $45.7 million reported in the same period last year.  Second quarter GAAP net income was $8.0 million, or $0.25 per diluted share.  This compares to GAAP net income of $95,000, or $0.00 per diluted share in the prior year period.  2007 second quarter GAAP results include approximately $1.8 million of non-cash share-based compensation, or $0.06 per diluted share, net of taxes.  Excluding the effect of these charges, non-GAAP net income was $9.8 million or $0.31 per diluted share for the second quarter of 2007.

"Results for the second quarter 2007 continued to demonstrate that Novatel Wireless is executing ahead of plan and capitalizing on the growing worldwide demand for 3G wireless broadband access solutions," commented Brad Weinert, president of Novatel Wireless.  "Demand is strong across a wide range of products including Ovation USB devises, Merlin PC and Express cards, and Expedite embedded modems.  Adoption of USB wireless modems has been a primary growth driver with over $85 million in sales in the nine months since its introduction.  In the second half, we will introduce a number of exciting new products, including our next generation USB devises, in both the U.S. and Europe.  At the same, time, we are investing in R&D efforts in a number of key areas, ranging from new software products to new technologies."

"Our business continues to show substantial improvement, with second quarter non-GAAP net income nearly doubling that of the full-year in 2006," added Mr. Weinert.  "Based on the strength of our current demand and backlog, we are increasing our outlook for the year to between $415 million and $425 million in revenue and non-GAAP EPS in the range of $1.25 to $1.30.  This compares to previous guidance of $380 to $390 million in revenue and non-GAAP EPS of $1.00 to $1.05, an upward revision of over 20% to annual EPS guidance overall."

1    Novatel also provided revenue guidance for the third quarter ending September 31, 2007 of

2    approximately $100 million. The Company also increased its revenue guidance for the year ending

3    December 31, 2007, from the previously announced range of $380-$390 million, up to $415-$425

4    million.

5           27.    On August 9, 2007, Novatel filed its Quarterly Report on Form 10-Q with the SEC.

6    The Company's Form 10-Q was signed by defendants Weinert and Swaney, and reaffirmed the

7    Company's financial results announced on August 6, 2007. The Company's Form 10-Q also

8    contained Sarbanes-Oxley certifications, substantially similar to the certifications quoted above.

9

10          28.    On November 5, 2007, Novatel issued a press release entitled "Novatel Wireless

11   Reports Strong Third Quarter Financial Results; Revenue Grows 90% Year Over Year, GAAP EPS

12   of $0.28 per share and Non-GAAP EPS of $0.31 per share," which stated:

13          Novatel Wireless, Inc., a leading provider of wireless broadband access solutions,
            today reported financial results for the third quarter ended September 30, 2007.

14

15          Revenue for the third quarter increased 90% to approximately $104.6 million
            versus revenue of $55.1 million reported in the same period last year. Third quarter

16          GAAP net income was $9.2 million, or $0.28 per diluted share. This compares to
            GAAP net loss of $895,000 or $0.03 per diluted share in the prior year period. Third

17          quarter GAAP results include approximately $1.1 million of non-cash share-based
            compensation expense, net of taxes, or $0.03 per diluted share. Excluding the effect

18          of these charges, non-GAAP net income was $10.3 million or $0.31 per diluted share
            for the third quarter of 2007.

19          "Revenues were above previous guidance, increasing by 90% year-over-year
            as we continued to benefit from our leadership position as an innovative provider of

20          3G wireless products to our strategic customers," said Brad Weinert, president of
            Novatel Wireless. "Quarterly revenues were spread across a balanced range of

21          products with upside to the quarter from strong performance across our entire USB
            product line and major contributions from our next generation USB products in

22          Europe and the U.S. which accounted for over $40 million in revenue."

23          "Our new HSUPA USB product targeting the European market contributed
            over $5 million in revenues and helped drive strong international sales. Our HSPA

24          revenue in the quarter was a record 29.6% of total sales," added Mr. Weinert. "Even
            more importantly, our second generation EVDO USB modem, the innovative

25          Ovation U727, was launched late in the third quarter in the U.S. market as the
            smallest form factor available, with a number of compelling new features not

26          available in any other USB device currently on the market. These included storage
            capacity, GPS locate-and-find capabilities and Linux support. Based in part on the

27          positive outlook for these products, we expect fourth quarter revenue to be the
            highest in company history as we move forward with strong momentum and record

28          order flow."

Novatel also provided revenue guidance for the fourth quarter ending December 31, 2007 of approximately $120 million.  The Company stated: "Revenue and earnings guidance for the fourth quarter of 2007 include expectations of strong demand for the company's products, particularly its USB products, as well as assumptions about industry wide supply constraints on certain components."

29.     On November 9, 2007, Novatel filed its Quarterly Report on Form 10-Q with the SEC.  The Company's Form 10-Q was signed by defendants Weinert and Swaney, and reaffirmed the Company's financial results previously announced on November 5, 2007.  The Company's Form 10-Q also contained Sarbanes-Oxley certifications, substantially similar to the certifications quoted above.

30.     On February 20, 2008, Novatel issued a press release entitled "Novatel Wireless Announces Fourth Quarter and FY2007 Results; Revenues Increase 97% in 2007 and 53% in Q4; GAAP Net Income Reaches $1.49 per Diluted Share in 2007; More than Triple in Q4 Y-Y to $0.34 per Diluted Share," which stated:

> Novatel Wireless, Inc., a leading provider of wireless broadband access solutions, today announced financial results for the fourth quarter and year ended December 31, 2007.  Novatel Wireless reported fourth quarter revenue increased 53% to $118 million compared to the fourth quarter ended December 31, 2006.  Net income on a generally accepted accounting principles (GAAP) basis increased to $11.1 million or $0.34 per diluted share, compared to GAAP net income of $2.6 million or $0.09 per diluted share in the prior year period.  GAAP net income includes $2.0 million in stock-based compensation expenses, net of income tax.  Excluding these charges, non-GAAP net income was $13.1 million or $0.40 per diluted share, compared to non-GAAP net income of $4.4 million or $0.14 per diluted share for the prior year period.
>
> For the full year, the Company reported revenue of $430 million, GAAP net income of $38.4 million or $1.19 per diluted share, and non-GAAP net income of $45.3 million or $1.40 per diluted share.
>
> "Novatel Wireless delivered outstanding 2007 results with 97% revenue growth year over year, and record order growth driven by our industry-leading USB products," said Peter Leparulo, executive chairman of Novatel Wireless.  "Our ability to bring highly innovative products to market well ahead of our competitors has been key to our success.  During the year, we introduced seven new products, including two generations of USB products, and made significant progress in our goal to steadily increase our product momentum throughout EMEA.  As we enter 2008, our innovation pipeline is in excellent share, we are focused on profitable growth, and we

- 10 -

1       will continue to execute our long-term diversification strategy.  During 2007, cash
and investments increased by $69 million and our balance sheet is strong with $153
2       million in cash and investments, or $4.61 per diluted share, with no debt."

3   Novatel also provided revenue guidance for the first quarter ending March 31, 2007 of

4   approximately $110 million.  The Company stated: "Revenue and earning guidance for the first

5   quarter of 2008 include expectations of strong demand for the Company's products, particularly its

6   USB products, as well as assumptions about industry wide supply constraints on certain

7   components."

8         31.     On March 3, 2008, Novatel filed its Annual Report on Form 10-K with the SEC.  The

9   Company's Form 10-K was signed by defendants Weinert, Leddon, Leparulo and Lorenzetti, and

10   reaffirmed the Company's financial results previously announced on February 20, 2008, except that,

11   as the Company explained:

13           The audited financial statements included in this report contain updated
information from that which the Company furnished on February 20, 2008, including
a $382,000 increase in net income and a 306,000 share decrease in diluted weighted
14         average shares outstanding for the year ended December 31, 2007.  This updated
information increases the previously reported net income per diluted share by $0.01
15         and $0.02 for the three and twelve months ended December 31, 2007, respectively.
The update resulted from an increase in compensation expense of $441,000 after
16         assessing the impact of performance based conditions under FAS 123R on certain
restricted stock units granted to employees during 2007, and a change in the
17         Company's tax provision predominantly related to its Canadian subsidiary.
Corresponding updates have been made to the financial statements previously
18         furnished by the Company and can be found on the "Investors" page of the
Company's website under "Financial Releases."

20   The Company's Form 10-K also contained Sarbanes-Oxley certifications, substantially similar to the

21   certifications quoted above.

22         32.     On April 14, 2008, the Company issued a press release entitled "Novatel Wireless

23   Reports Preliminary First Quarter 2008 Results; Board Appoints Peter V. Leparulo CEO."  The

24   release stated in part:

25         Novatel Wireless, Inc., a leading provider of wireless broadband access solutions,
today reported preliminary financial results for the first quarter ended March 31,
26         2008 . . . .

27           Revenues for the first quarter are expected to be approximately $91 million,
lower than the company's prior guidance of $110 million.  GAAP earnings per share
28

are expected to be in the range of $0.13 to $0.15 and non-GAAP EPS is expected to be between $0.16 and $0.18 per share.

"We are very disappointed with our first quarter results," said Peter Leparulo. "Approximately $10 million of the shortfall was attributable to a delayed launch of the MC930D with a major European carrier customer. Additionally, we had lower than expected sales of our enterprise-class MC727 USB products to one major customer. We are between product launch cycles for our USB devices and demand in the current environment has shifted toward lower end products. We continue to see solid demand for our first generation MCD3000 USB products selling into this market shift, and we expect our second generation USB products to become the low end promotional offering as we introduce our third generation products mid-year."

"Importantly, we believe that our core market opportunity is attractive and growing and we believe we have the right product introductions to lead the market in innovation in the second half of the year. In addition, we are encouraged by the opportunities for growth in complementary markets, as evidenced by our recently announced products and partnerships. Moving forward, we are refocusing management on internal execution and improving operating results."

33.   On April 14, 2008, on the Company's earnings conference call, Leparulo made the following statements:

[Leparulo:]

I'm very disappointed to report preliminary results for the first quarter which are below our expectations. Currently, we expect to report revenues of approximately $91 million, GAAP EPS in the range of $0.13 to $0.15 per share, and non-GAAP EPS of $0.16 to $0.18 per share.

The revenue shortfall was a result of a number of factors. First, one of our carrier partners in Europe delayed the launch of our MC930D products into their network. That delay, which was due to technical issues unrelated to our products, pushed back approximately $10 million in orders. We have already begun shipping these orders in the new quarter.

Secondly, we are between product cycles with one of our key partners. Demand has shifted to lower-end products at many carriers. And while our MCD3000 continues to sell well, sales of our Enterprise class MC727 products were lower than expected at one key customer.

Compounding these two issues, we clearly did not adequately execute both from an operations basis and with our sales effort, especially toward the end of the quarter. In some cases, we did not have the right products for the right customers. We were also not able to close other pieces of business in a timely fashion before the quarter end.

Everyone around this table agrees that better execution is required for this unforgiving market, where carriers are looking to maintain leaner inventories.

34.   On May 1, 2008, the Company issued a press release entitled "Novatel Wireless Reports First Quarter 2008 Results," which stated in part:

- 12 -

Novatel Wireless, Inc., a leading provider of wireless broadband access solutions, today reported financial results for the first quarter ended March 31, 2008. Revenues for the first quarter of 2008 were $91.3 million compared to $109.8 million in the prior year period. Net income on a generally accepted accounting principles (GAAP) basis was $4.4 million or $0.14 per diluted share, compared to GAAP net income of $10.1 million or $0.34 per diluted share in the prior year period. GAAP net income includes $1.2 million in stock-based compensation expenses, net of income tax. Excluding these charges, non-GAAP net income was $5.6 million or $0.17 per diluted share, compared to non-GAAP net income of $12.1 million or $0.40 per diluted share for the prior year period.

"The first three months of 2008 were challenging on the heels of a year where revenues grew 97% and we delivered non-GAAP diluted EPS of $1.43 to the bottom line," said Peter V. Leparulo, chairman and CEO, Novatel Wireless. "We believe that the overall market is experiencing considerable growth and we remain intensely focused on accelerating development of our next generation products, which we believe will position us with the best-in-class, highest performing products with the most differentiated features in the market. By focusing on what we do best – bringing innovative broadband internet access products to market well ahead of our competitors – we believe we can quickly regain our leadership position."

35.    On May 1, 2008, on the Company's earnings conference call, Leparulo made the following statements:

[Leparulo:]

As we described on our April 14th call, the first quarter's results were lower than our expectations. We are in a strong market and there are many significant opportunities available to the Company. And we are disappointed we didn't deliver on that potential in the first quarter.

That being said, we believe we have a strong plan to return the Company to growth and to a performance level that you, as shareholders, expect. To begin, revenue for the first quarter was $91 million. EPS on a GAAP basis was $0.14 per share and non-GAAP EPS was $0.17 per share. As we described earlier, revenue was lower than anticipated due primarily to three factors.

First, one our carrier partners in Europe delayed the launch of our MC930D product into their network. We have already begun shipping these orders in volume in the new quarter. Second, sales of our enterprise class MC727 products were lower than expected at one key customer. However, our first generation MCD3000 product sold well during the first quarter. And lastly, we did not adequately execute both from an operations basis and with our sales effort, especially toward the end of the quarter.

36.    On May 13, 2008, the Company filed a Form 12b-25 with the SEC for an extension of time to file its Form 10-Q. The Form 12b-25 stated in part:

Novatel Wireless, Inc. (the "Company") was unable to finalize preparation of its financial statements in sufficient time to file its Quarterly Report on Form 10-Q for the period ended March 31, 2008 (the "Form 10-Q") by the prescribed due date without unreasonable effort and expense. The Company and its Audit Committee

undertook an enhanced review of the accounting for a specific customer contract, which review was substantially completed today.  As a result of such review, the Company and its Audit Committee do not expect any change to the accounting under that contract, or to any previously reported financial statements or earnings disclosed in the Company's Current Report on Form 8-K filed on May 1, 2008.  However, the Company has filed this Form 12b-25 for an extension to finalize its Form 10-Q, and expects to file its Form 10-Q on or before May 19, 2008, the fifth calendar day following its prescribed due date.

*       *       *

The Company expects to report that its net income for the quarter ended March 31, 2008 was $4.4 million, or $0.14 per diluted share, compared to net income of $10.1 million, or $0.34 per diluted share, for the quarter ended March 31, 2007.  The decrease in net income was primarily due to a decrease in revenue from $109.8 million for the quarter ended March 31, 2007 to $91.3 million for the quarter ended March 31, 2008.  This decrease was primarily attributable to a decrease in sales of the Company's EV-DO ExpressCards and PC cards, USB Modems, and the Company's EV-DO Fixed-Mobile Convergence products, partially offset by a net increase in the Company's High Speed Packet Access, or HSPA, products.  The decrease in EV-DO product sales for the quarter ended March 31, 2008 compared to the quarter ended March 31, 2007 was approximately $34.1 million.  The net increase in the Company's HSPA product sales for the quarter ended March 31, 2008 compared to the quarter ended March 31, 2007 was approximately $15.5 million.

37.     On May 27, 2008, the Company issued a press release entitled "Novatel Wireless Receives Notice From Nasdaq Due to Late Filing of Form 10-Q," which stated in part:

Novatel Wireless, Inc. announced today that due to the delay in the filing of its Quarterly Report on Form 10-Q for its quarter ended March 31, 2008, it has received, as expected, a Nasdaq Staff Determination Letter indicating that the Company is not in compliance with the Nasdaq continued listing requirements set forth in Nasdaq Marketplace Rule 4310(c)(14).

*       *       *

As previously announced, the Company has delayed filing its Quarterly Report on Form 10-Q for its quarter ended March 31, 2008 as a result of the self-initiated expanded enhanced review undertaken by the Company and its Audit Committee of the Company's revenue cut off procedures and internal controls related to certain customer contracts, which review is ongoing.  The Company intends to file its Quarterly Report on Form 10-Q for its quarter ended March 31, 2008 as soon as practicable after completion of the review.

38.     On August 7, 2008, the Company issued a press release entitled "NASDAQ Grants Novatel Wireless Request for Continued Listing," which stated in part:

Novatel Wireless, Inc., a leading provider of wireless broadband access solutions, today announced that the NASDAQ Listing Qualifications Panel has granted the Company's request for continued listing on NASDAQ through October 17, 2008, by which date the Company must file its Form 10-Q for the period ending March 31,

2008 with the Securities and Exchange Commission. The Company is committed to regaining compliance with all NASDAQ listing requirements as soon as possible.

39.     On August 15, 2008, the Company issued a press release entitled "Novatel Wireless Receives Notice from Nasdaq Due to Late Filing of Form 10-Q," which stated in part:

> Novatel Wireless, Inc. announced today that due to the delay in the filing of its Quarterly Report on Form 10-Q for its quarter ended June 30, 2008, it has received, as expected, a Nasdaq Staff Determination Letter indicating that the Company is not in compliance with the Nasdaq continued listing requirements set forth in Nasdaq Marketplace Rule 4310(c)(14).

> The Company delayed filing its Quarterly Report on Form 10-Q for the quarters ended March 31st and June 30, 2008 as a result of the self-initiated expanded review undertaken by the Company and its Audit Committee of the Company's revenue cut off procedures, internal controls and accounting related to certain customer contracts, which review is ongoing. On July 17, 2008, the Company met with the NASDAQ Listing Qualifications Panel to request an extension of its conditional listing. The Panel subsequently granted an extension to its conditional listing until October 17, 2008. The Company intends to file its Quarterly Reports on Form 10-Q as soon as practicable after completion of the review.

## DEFENDANTS' STATEMENTS WERE FALSE

40.     Defendants' statements set forth above were materially false and misleading because (i) the Company recognized revenue in violation of its own revenue cut-off procedures; (ii) the Company misstated its financial results during the Class Period; and (iii) defendants misrepresented the nature and extent of the Company's internal review. While defendants claimed that the review involved a single contract and was "substantially completed" in May of 2008, it was, in fact, ongoing as of August 19 and involved at least six separate transactions representing over $9 million in revenue.

## THE TRUTH BEGINS TO COME TO LIGHT

41.     On August 19, 2008, the Company issued a press release entitled "Novatel Wireless Reports Preliminary Second Quarter 2008 Results," which stated in part:

> Review Update

> As previously announced, the Audit Committee of the Company's board of directors is conducting an expanded review into the Company's revenue cut-off procedures, internal control and accounting related to certain customer contracts. During the course of the review to date, six transactions have undergone further

- 15 -

accounting review, principally as to whether these shipments were recognized as revenue in the appropriate quarter. These shipments involved aggregate revenues of $9.1 million and pre-tax income of $1.1 million. As discussed above, the review has resulted in a preliminary determination to move approximately $3.4 million of revenues from the first quarter to the second quarter of 2008.

As previously noted, the accounting review is ongoing and may identify other issues. The Audit Committee review may, among other things, result in additional revenue moving between quarters or years. To date, no determination has been made as to whether a restatement of our 2007 audited financial statements will be required. Upon completion of the Audit Committee review, a decision will be made as to whether a restatement is required. Following the completion of this review, we will finalize our financial statements for the first and second quarters. The fees and expenses billed through June 30, 2008 by outside professionals in connection with the review are approximately $2.6 million, on a pre-tax basis.

"We are continuing to work closely with our independent auditors," said Kenneth Leddon, chief financial officer for Novatel Wireless. "The Audit Committee review is primarily focused on the timing of certain revenue and related income and could result in revenue and income moving from one quarter or year to another. Although this process has taken us longer and is more expensive than we initially expected, it is important to commit the time and resources required to ensure a thorough and comprehensive review and implement appropriate remedial measures."

42.    On August 19, 2008, on the Company's earnings conference call, defendants made the following statements:

[Leparulo:]

As previously announced, the Audit Committee is conducting an expanded review into the Company's revenue cut-off procedures, internal controls, and accounting related to certain customer contracts. During the course of the review to date six transactions have undergone further accounting review, principally as to whether revenue from these shipments was recognized in the appropriate quarter.

These shipments involve aggregate revenues of $9.1 million and pretax income of $1.1 million. The review has resulted in a preliminary determination to move approximately $3.4 million of revenues from the first quarter to the second quarter of 2008. I do want to reiterate that the accounting review is ongoing and may identity [sic] other issues.

*       *       *

[Leddon:]

The professional fees and expenses related to the review that were incurred through June 30, 2008 total approximately $2.6 million on a pretax basis, significantly above our initial expectations.

*       *       *

1    Anthony Stoss – Craig-Hallum Capital – Analyst

2         Also, Peter, can you talk about what kind of controls you are putting in place
     on the accounting side?  Are we beefing up staff?  Were we understaffed?  Help us
3    understand why we are so off kilt on Q1 and Q2, and what kind of assurances
     investors might have for Q3, Q4 or whatever that something is not going to pop-up
4    again?

5    [Leparulo:]

6         Sure.  Like we said, these involve principally revenue cut-off procedures
     relating to the timing of revenue.  We have not seen any significant issue about the
7    validity of any revenue.

8         So because they involve revenue cut-off procedures, we are putting in place
     really controls at the end of the quarter to make sure that the items related to
9    deliveries at the end of a quarter tick and tie.

10        They get fairly technical in terms of what the actual controls will be.  But
     about suffice it to say that there has not been any control that has been recommended
11   by any outside adviser that we do not intend to implement, if we haven't already, in
     the next several months.

12
     43.    As a result of those disclosures, Novatel's stock price dropped from $8.40 to $6.29 in
13
14   one day.  This decrease in Novatel's stock price was a result of the artificial inflation caused by

15   defendants' misleading statements coming out of the stock price.

16                      **LOSS CAUSATION/ECONOMIC LOSS**

17        44.    During the Class Period, as detailed herein, defendants made false and misleading

18   statements regarding the Company's financial performance and engaged in a scheme to deceive the

19   market.  This artificially inflated Novatel's stock price and operated as a fraud or deceit on the Class.

20   Later, when defendants' prior misrepresentations and fraudulent conduct became apparent to the

21   market, Novatel's stock price fell precipitously, as the prior artificial inflation came out of the stock
22
23   price over time.  As a result of their purchases of Novatel securities during the Class Period, plaintiff

24   and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities

25   laws.

26

27

28

## NO SAFE HARBOR

45.     Novatel's verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

46.     The defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Novatel who knew that the FLS was false. None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.  On the contrary, such statements concealed critical information about Novatel's financial performance.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:  FRAUD ON THE MARKET

47.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     The omissions and misrepresentations were material;

(c)     The Company's stock traded in an efficient market;

(d)     The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's stock; and

(e)     Plaintiff and other members of the Class purchased Novatel stock between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

48.     At all relevant times, the market for Novatel stock was efficient for the following reasons, among others:

(a)     As a regulated issuer, Novatel filed periodic public reports with the SEC; and

(b)     Novatel regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Novatel common stock during the Class Period (the "Class"). Excluded from the Class are defendants, directors and officers of Novatel and their families and affiliates.

50.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Novatel had more than 31 million shares of stock outstanding, owned by thousands of persons.

51.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether the 1934 Act was violated by defendants;

(b)     Whether defendants omitted and/or misrepresented material facts;

(c)     Whether defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether defendants knew or recklessly disregarded that their statements were false and misleading;

(e)     Whether the price of Novatel stock was artificially inflated; and

(f)     The extent of damage sustained by Class members and the appropriate measure of damages.

52.     Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

53.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

54.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

### For Violation of §10(b) of the 1934 Act
### and Rule 10b-5 Against All Defendants

55.     Plaintiff incorporates ¶¶1-54 by reference.

56.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

57.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes and artifices to defraud;

1      (b)     Made untrue statements of material facts or omitted to state material facts

2   necessary in order to make the statements made, in light of the circumstances under which they were

3   made, not misleading; or

4      (c)     Engaged in acts, practices, and a course of business that operated as a fraud or

5   deceit upon plaintiff and others similarly situated in connection with their purchases of Novatel

6

7   securities during the Class Period.

8      58.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of

9   the market, they paid artificially inflated prices for Novatel securities. Plaintiff and the Class would

10  not have purchased Novatel securities at the prices they paid, or at all, if they had been aware that the

11  market prices had been artificially and falsely inflated by defendants' misleading statements.

12

13     59.     As a direct and proximate result of these defendants' wrongful conduct, plaintiff and

14  the other members of the Class suffered damages in connection with their purchases of Novatel

15  securities during the Class Period.

16                                 **COUNT II**

17                   **For Violation of §20(a) of the 1934 Act**
                             **Against All Defendants**

18     60.     Plaintiff incorporates ¶¶1-59 by reference.

19

20     61.     The Individual Defendants acted as controlling persons of Novatel within the

21  meaning of §20 of the 1934 Act. By virtue of their positions and their power to control public

22  statements about Novatel, the Individual Defendants had the power and ability to control the actions

23  of Novatel and its employees. Novatel controlled the Individual Defendants and its other officers

24  and employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

25                             **PRAYER FOR RELIEF**

26  WHEREFORE, plaintiff prays for judgment as follows:

27  A.      Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

28

1    B.    Awarding plaintiff and the members of the Class damages and interest;

2    C.    Awarding plaintiff's reasonable costs, including attorneys' fees; and

3    D.    Awarding such equitable/injunctive or other relief as the Court may deem just and

4 proper.

5                                    **JURY DEMAND**

6    Plaintiff demands a trial by jury.

7 DATED: September 18, 2008                   COUGHLIN STOIA GELLER
                                               RUDMAN & ROBBINS LLP
8                                            DARREN J. ROBBINS
                                             MATTHEW P. MONTGOMERY
9

10

11                                             MATTHEW P. MONTGOMERY

12                                           655 West Broadway, Suite 1900
                                             San Diego, CA 92101
13                                           Telephone: 619/231-1058
                                             619/231-7423 (fax)

14
                                             DYER & BERENS LLP
15                                           JEFFREY A. BERENS
                                             682 Grant Street
16                                           Denver, CO 80203-3507
                                             Telephone: 303/861-1764
17                                           303/395-0393 (fax)

18                                           HOLZER, HOLZER & FISTEL, LLC
                                             COREY D. HOLZER
19                                           MICHAEL I. FISTEL, JR.
                                             MARSHALL P. DEES
20                                           1117 Perimeter Center West, Suite E-107
                                             Atlanta, GA 30338
21                                           Telephone: 770/392-0090
                                             770/392-0029 (fax)
22
                                             Attorneys for Plaintiff
23 S:\CptDraft\Securities\Cpt Novatel.doc

24

25

26

27

28

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws, that:

1. The undersigned has reviewed the complaint and approves its filing.

2. The undersigned did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this lawsuit.

3. The undersigned is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. The undersigned's purchases and sales of Novatel Wireless, Inc. (NASDAQ: NVTL) common stock during the Class Period are as follows:

| Transaction Date(s) | # of Shares | Buy or Sell | Price Per Share |
|---|---|---|---|
| 03-25-2008 | 65 | Buy | 10.00 |
| 04-30-2008 | 65 | Buy | 8.80 |

5. During the three years prior to the date of this Certificate, the undersigned has sought to serve or served as a representative party for a class in the following actions under the federal securities laws:

6. The undersigned will not accept any payment for serving as a representative party on behalf of the class beyond the undersigned's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of September 2008.

_Matt Harms_ [signature]

Matt Harms [signature]

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| MATTHEW HARMS, Individually and on Behalf of All Others Similarly Situated | NOVATEL WIRELESS, INC., PETER V. LEPARULO, (See Attachment A)    08 SEP 18 PM 12:10 |

**(b)** County of Residence of First Listed Plaintiff  **Wisconsin**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Matthew P. Montgomery, Coughlin Stoia Geller Rudman & Robbins
655 W. Broadway, Ste. 1900, San Diego, CA 92101 619/231-1058

Attorneys (If Known)

**'08 CV 1714 H POR**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. §§78j(b) and 78t(a)
Brief description of cause:
Complaint for Violation of the Federal Securities Laws

| VII. REQUESTED IN COMPLAINT: | ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ | CHECK YES only if demanded in complaint: JURY DEMAND:  ☒ Yes  ☐ No |
|---|---|---|---|

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE  Marilyn L. Huff   DOCKET NUMBER  08-cv--1689-H-RBB

DATE  09/18/2008

SIGNATURE OF ATTORNEY OF RECORD
Matthew P. Montgomery

FOR OFFICE USE ONLY

RECEIPT # 155176    AMOUNT $350  9/18/08 BH    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____



ATTACHMENT A

Defendants (cont.)

GEORGE B. WEINERT, DAN L. HALVORSON, KENNETH G. LEDDON, CHRISTOPHER
J. ROSS, JAMES W. LEDWITH, GREG LORENZETTI, DAVID A. WERNER and SHAWN
C. SWANEY,

**UNITED STATES**
**DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**#  155176      —  BH**

**September 18, 2008**
**12:11:29**

**Civ Fil Non-Pris**
USAO #.: 08CV1714 CIVIL FILING
Judge..: MARILYN L HUFF
Amount.:                    $350.00 CK
Check#.: BC#59155

**Total—>   $350.00**

FROM: HARMS V. NOVATEL WIRELESS
      CIVIL FILING